Apologies, Your Honor. Thank you. v. Narra. v. Narra. Okay, Mr. Estoban. Good morning. May it please the Court, my name is Alex Estoban, and I represent SkyHop, or the appellants, who brought this case against Mr. Narra and Indizin, Inc. The Court should reverse the District Court's dismissal because personal jurisdiction exists over the defendants, who in this case denied SkyHopTech access to its AWS servers and sent multiple emails into the State demanding, among other things, a ransom of $1.1 million in exchange for the return of SkyHopTech's digital property. Now, can I ask you a question about the peculiarity of the Florida long-arm statute, which a lot of this turns on. I had a hard time grasping this, but am I right in understanding that under Florida law, whether there is jurisdiction under the long-arm statute that, under the provision we're talking about today, basically turns on whether the complaint states a claim for relief? That is correct under the prong of the commission of a tort in Florida. So there's two prongs. So even though it should be about jurisdiction, it's actually about whether you've stated a claim? That's exactly right. Okay. But is it necessarily the case that you'd have to find it under that, or could you find it under the first prong? That's correct. You could find personal jurisdiction under the first prong. Meaning what? Engaging in business in Florida, doing business in Florida, without needing to consider the commission of a tort or whether a claim was stated for a tort in Florida. I would ask you to address the second first. Correct. And the reason I would, just speaking for myself, I think the claim that they were doing business in Florida is a tougher one to sustain on this record than the claim that there was an extortionate threat made in the state of Florida when the emails and the demands were made. So just speaking for myself, it would be helpful if you could address the extortionate threat. Absolutely, Judge Marcus. Admittedly, you've got to go to the merits because Florida tells us that, and we're sitting as a court under Erie. We're bound by Florida. And that's correct. And to answer your question, I will also start with the question that was posed a few weeks ago by the panel, which is whether the digital property that NARA and Indizin wrongfully withheld constitutes a computer as defined by the computer. Right. What I want you to focus on first, I understand under the statute you've got to show an intent to extort. Yes. Any money or thing of value you must transmit in interstate commerce, any communication that contains a threat to cause damage to a protected computer. You started with six, the protected computer. I'd ask you to help me with number one. Understood. Intent to extort. And the reason for my question, just going right to the heart of it, we don't have a whole bunch of time here, is that there's no definition of extortion, at least in this statute. You could look at the Hobbs Act and things like that to find a definition of extortion. Help me understand why taking everything in the complaint is true and drawing all inferences in favor of the non-moving party, this constituted extortive conduct rather than simply driving a hard bargain. Maybe a fine line between your money or your life and, hey, we're negotiating hardball in a business context. Why is this one arguably and not the other? I'll start with the facts, which is, in this case, SkyHub Technologies paid Indizin over almost $2.5 million to develop the software. That was all of the amounts that were invoiced and due to Indizin. That was undisputed by the appellees. There was no money due to Mr. Nara for individually for any development of any software. Mr. Nara was supposed to have an interest in the company as an owner way back when the company was first formed. And that is the reason why, as being one of the initial intended owners, they selected his company, one of the primary reasons, to build the software. And they built it, and when they're building it, we purchase the servers, we build the software on the servers, and he's simply the one that had the passwords. When that relationship was going to lawfully end, there was no more money due, no live, no contract, nothing, nothing that bound them together. SkyHub Technologies had made the decision. It was going to now hire in-house developers to continue development. Mr. Nara took advantage of that and said, okay, but I'm not giving you the passwords back until we get $1.1 million, money that was not owed and never invoiced. And that's actually the precise, almost identical facts that were presented in the implant and viral systems case, which found under this same subsection of the Computer Fraud and Abuse Act for that to be an extortion. And we actually went to Black's Law, and I believe it's cited in our brief, the definition of extortion. And according to the fourth pocket edition of Black's Law, it reads, the act or practice of obtaining something or compelling some action by illegal means or by force or coercion. And in this case, that conduct would fall squarely within that. Not force. Coercion. So you're talking about economic coercion. Absolutely. And in this part, it's no different. His conduct is, from a practical perspective, no different than we'll call it an outside hacker. In the most recent case of Van Buren, we had the distinction of outside hackers versus inside hackers. So just for purposes of an example, his conduct is no different than an outside hacker obtaining passwords to their computer or their website or whatever the case might be. In this case, the servers obtaining the passwords and saying, hey, we're not going to give you the passwords back. You're not going to be able to get back in unless you give us $1.1 million. Okay. Tell me this. What in the heck does this have to do, though, with a threat to cause damage to a protected computer or a demand or request for money or other thing of value in relation to damage to a protected computer? When I go to the definition of computer, the term computer refers to an electronic, magnetic, optical, or other high-speed data processing device or performing logical arithmetic or storage functions and includes any data storage facility or communications facility directly related to or operating in conjunction with such device. What does this have to do with any of that? So the term computer, and in this case what we've alleged is a computer, is the AWS servers. And AWS means the Amazon. This is damage to the servers? It's Amazon Web Servers. So the software is held in those computers. And the definition of damage, if we look at that in the statute, says any impairment to the availability of data or information and the moment that they are withholding passwords and preventing our client from even getting into the computer, that is the impairment of the availability of data and information inside the computer. They've impaired us from getting to the software, which is inside the computer. That's the information or the data that's inside. The actual computer is the AWS servers. Now, the cases on this, we've provided some supplemental authority, and we have, for example, the UCAR tech case, and I understood it's a district court opinion, but nevertheless could be persuasive, has found the AWS servers, the same servers that are at issue here, to be a computer within the definition of the act. Similarly, the Florida Atlantic University case that we provided, that was Judge Altman from the Southern District of Florida, made actually somewhat of an analysis on saying, all right, do these e-mail servers that were in that case hosted by Google, which for all intents and purposes is exactly what we have here, servers in our case that are hosted by Amazon, and Judge Altman tackled that issue saying yes. The problem is, it seems to me that damage is damage to your access to it. It's not damage to the device. By not giving you the passwords, it doesn't in any way impair the operation of the servers, does it? Well, it does because if you can't It only impairs your ability to have access to them. But if, well, for example, servers and computers and in particular this software, you need to be able to access it to make it work. So if somebody can't access it, if somebody They can access it, right. But now we're forced with the situation, which is we are essentially forced to have to do business with them to pay them. I know. The only thing I'm trying to figure out is whether this statute applies to your controversy. Because if we're traveling under the tortious act aspect of the Florida long arm statute, we have to look at whether the statute itself is satisfied. And it seems to me the problem is that that statute is about extortion in relation to give me money or I'm going to damage your computer. And that's as opposed to give me money or I'm not going to give you access to your computer. The computer is going to be fine. It's going to operate just fine. And those who have the password will be able to access it just fine. So the problem is that we are the ones that are entitled to the information inside of the computer. So if we go to, for example, the second prong of that statute, it says when it's when the act of sending. So we're looking at the 7C, the subsection A7C. When the act of sending those same extortionate emails, we look at those emails. We couple that with the fact that the appellees actually withheld the access to the servers. At that point, there was that is the damage to the computer. This is, again, no different than any hacker that would come in and. But it really turns on, you would say that the impairment to the availability of it. Right. Yeah. On the on the impairment of the availability of the data that's inside the computer. And that is that is precisely what we've what we have here. OK. You've saved some time for rebuttal. Mr. Garay. Good morning. May it please the court. My name is Gabriel Garay. And with me at council table is Bob Parks. You represent Mr. Pravin, Nara and Indizen Inc. This is not a CFAA case. It is not a cadre case. This is an argument over who owns the software in question. The record is very clear. Yeah. But if the complaint alleges that you're extorting money from them. And denying them access to the data stored on this server. Why isn't that sufficient for purposes of alleging at least a tour within the meaning of this federal statute? And therefore sufficient to to go forward under the Florida long arm statute. So the district court addressed that issue. And when when the when the district court looked at the facts, looked at the emails in the record. Looked at the all of the correspondence in the record. The district court found that there was no extortion. That that's one. Two. All they've done is they say we have no availability of data. What does that mean? This complaint is completely silent on that. And it's simply incorrect. The software has continued to run. And their business has continued. Suppose they wanted to alter, change or modify the software. To correspond to changing business conditions. Could they do that? So long as you held access to the software in your possession. And refused to give them access to it. So they could do something with it. So the question of access to the software. Really has to begin with access to the computer. Which is what CFAA is about. Those computers. Those AWS accounts. I don't want to confuse the question that I originally asked. And the question Judge Pryor asked. I asked about extortive conduct. He said even assuming argue under you got it. Did you cause damage to the computer? The statute doesn't talk about software. It doesn't talk about servers. It talks about a computer. So try and help me with what we're talking about here. There are two different questions between extortive conduct. Tortious conduct that's extortive in nature. And whether it's the computer itself that's being damaged. They have alleged. Blanketly that there's extortion. In support of that. They have one e-mail. Two e-mails. One from the chief revenue officer Rob Milks. Who says thanks for your offer of 75. We reject that. Perveen's offer still stands. Pay the money you owe. This is what is acceptable. That's not even what's owed. This is what is acceptable to us. And you can have the software. Their demand was not for access to our servers. Their demand was for return of the property. The software. That's why this is not. They wanted the password too, right? They may have wanted the password. That's what they said in the declaration. That's not what was said in the demand letter. And it's not what was alleged in the complaint. In Christine Skoda's declaration, she says we requested the passwords. That's simply incorrect. The letter doesn't mention the servers at all. It says give us our stuff. But they have to be entitled to that software in the first instance to get it back. And they simply haven't paid for it. And because there's a controversy as to that. Let me just ask you a question about that. And this actually goes to Chief Judge Pryor's question. I mean, it seems to me like ransomware sort of is a similar situation as to what's alleged. I realize that, you know, factually you're saying it's different because we didn't engage in extortion. This is what we were owed. This is contractual. But we're talking about allegations as opposed to whatever the facts might shake out to be. After all, we are only at the jurisdiction stage. We're not deciding the merits. So, I mean, in a ransomware situation, why is that? I mean, ransomware is clear. You know, somebody puts something on your computer and says you can't access anything unless you pay us a million dollars. Why is that any different than what they're alleging here? That's a good question. And Van Buren answers that question. The CFAA says, the Supreme Court now says that the CFAA is effectively narrowed now. The question is, is it a gates up or gates down question? Did Pravin Nara or Indizin go around any technological barriers? Did they access a computer that they weren't entitled to access? Did they access a file within a computer they were not entitled to access? And in furtherance of committing an extortion? And the answer to that question is no. The servers were theirs. Because they went, they arguably went beyond authorized access, but it doesn't matter under Van Buren. That's what you're saying. Under Van Buren, there is no CFAA cause of action for the facts of this case. But the beyond authorization part would only be if there was some barrier to them accessing the software on their own computers. Which was the issue in Van Buren. They said he didn't have to do anything to get around. He had access to this information. If you think of a server... In Van Buren, the argument was basically he exceeded his authorized access. Yes, you're allowed to use this computer system. But you can use it only for A, B, and C purposes. And you went ahead and used it for D. And so, and the court said, well, that doesn't really matter. He had access and access is access. And that's what you're saying too. That is absolutely correct. That's different from the ransomware situation because you don't have access at all. Correct. If we think of the servers in question as a physical space... And engage in ransomware. I mean, what would that... Is that sort of a gray line situation? Let's say you have authorized access. You work at a hospital. You have authorized access to the computer systems. But you decide to exceed your authorized access and install ransomware. That would be probably a violation. But that is not what's happening here. What's happening here is... But why isn't it what's happening here? And I will address that. If you look at the server as a physical space... Mr. Nara has all the keys to get into the physical space. As if it was his office or an apartment. For an example. It's not a perfect analogy, but that's the best I can do. He has the keys because he's entitled to have the keys. Because he is the account holder. There is no area in that server that is off limits to him. Including the area that houses the software. The property that we're talking about. So it can't be a CFAA violation. If he goes into his own server. To do whatever he needs to do. To keep the software running. Because now... We're talking about ransomware. And that's different. Because that's injecting a program into a computer. To either lock somebody out. That should be in the computer. Or to otherwise harm the data. Or steal the data. None of that is at issue here. And that's where they have a pleading problem. And they can't get to commit a tort in Florida. Because the facts simply don't support. The allegations are so bare. And they don't even track the statute. They say continued possession of software. It is a fight over the ownership of software. Not a hacking case. This is not an inside hacker. This is not an outside hacker. This is a fight over... It's ours. Mr. Nara and Indizin think it's theirs. Until they pay for it. And to answer Judge Marcus' question. What could they do if they want to do whatever they want with the software? They can pay what's owed. Or they can go to arbitration. Which is what happened in this case. The record is clear. I asked you the question originally. If they wanted to alter or modify their software in some way. To address different business conditions. They couldn't do that, could they? Until you sent it to them. As a practical matter. Mr. Nara and Indizin are the only ones. In this company. That do that work. But suppose they said. Thank you very much. Our relationship is at an end. And we want to hire somebody else. Could they alter, modify or change. The software. To address continuing business needs. Without you. Sending back what they wanted. Without our working on it. No. Because that's not the agreement. So they were married to you in perpetuity. No. They're married to Mr. Nara and Indizin. Until they either take the software. Possession of the software. By paying for it. Or someone decides whose software it is. But that's an issue of who had. Who really had access. The proper right to possess this. But I'm asking a question. Assuming arguendo. That they did. Could they alter the software. In any way to meet continuing. Or changing business conditions. Without you sending it to them. Not without themselves. Violating the CFAA. Forget the law. Could they change the software. Without you sending it to them. No. Okay. If they attempted to enter the servers. Through some circumvention. On their own. They would be violating the computer fraud and abuse act. Can I go back to the first prong. Of the personal jurisdiction. The long arm jurisdiction statute in Florida. Sure. And that is whether defendants engaged in a business. Or business venture in Florida. And so it confers specific jurisdiction. Over non-residents who quote operate. Conduct. Engage in. Or carry on a business. Or a business venture in Florida. And so what I'm wondering. Is you know. I think it's close. As to whether it might or might not be fulfilled here. But the case law. Seems to be all over the map on this. I think you could find cases. That would say yes it is. And cases that would say no it's not. But here we've got. There are three trips to Florida. Right. Your client. Winds up with a 32% stake. Even though he says he's giving it back. When there's a dispute between the other two. Major shareholders. Although at this point. I guess he's now saying one of the ways. That you can get your software access. Is if you give me back my stake. And then there are the emails. And I wonder. If we look at like. Maybe Intego. And I think Nevera. Why are those. Why is that not enough? So. You're absolutely right your honor. That the case law is kind of all over the place. And I believe that the most recent case. This court put out. Which was Del Valle case. Is a wonderful example. It's a classic example. Of the type of contacts. The type of business activity. That constitutes doing business in the state. And really reaching into the state. And. Purposeful availment. So if you look at the context. If you look at this case. Yes Mr. Nara did come over here. To meet with Ms. Skoda. There's no question about that. We put that in our affidavit. None of the CFA claims. Do not arise from. That sort of conduct. They simply don't. And it's different from saying. Well that conduct causes. The harm. Versus. Behavior or conduct. That rises to the level of. Purposeful availment. So you're basically saying. The problem isn't with the first part. Of that prong. It's with the connexity part of it. Yes your honor. Okay so you don't contest. That the first part might be satisfied. No I do actually. Because under. If you take the Del Valle case. As an example. As what I'll call for the sake of this. Because it's in the front of mind. The paradigm where someone says. We're going to set up offices in Florida. We're going to sell Floridians vacations. We're going to. Have agents in Florida. Like the Mosseri case. The Louis Vuitton case. We're going to have an interactive website. Where Floridians are going to be able to buy. Knock off handbags or whatever the accusation was. Purposeful availment. Reaching into Florida. Mr. Nara is not selling software in Florida. Mr. Nara is not selling. Trying to sell the sky plan in Florida. Which was one of the other cases. Where you take a copyrighted material. And send it into the state. Mr. Nara is not defaming anyone in Florida. But the business is operating in Florida. It was founded in Fort Lauderdale right. I mean is that right. It's a Delaware corporation. It was actually incorporated on the sun biz. Which is our Florida secretary of state. On the date the complaint was filed. But it had never been registered in Florida. Prior to that. Alright but it was. Effectively everything that was going on. The physical parts of the business. The people were located in Fort Lauderdale. Is that am I. That's correct. Except for Mr. Nara. Right. But he did come in a few times. Three times. He came in three times. And he had a 32% stake. And he's one of the founders. And he was the chief technology officer. Isn't that right. That was the intention in the beginning. Yes. He never ended up taking that position. Because there was litigation coming down the pipe. That he did not want to be involved in. That's all in the record. And also in the record. Given all of those circumstances. Why is that not him. Purposefully. Engaging in. Business. In Florida. It doesn't rise to the level. Of the type of activity. That would be considered. Conducting a business in Florida. Is it your position. That this all goes back to. What the Florida Supreme Court said. In Densmore. Which is that it must be. The defendants activities have to be considered. Collectively and show a general course. Of business activity. In the state for pecuniary benefit. Absolutely. It might be purposeful. Availment for purposes. Of federal. Due process. Considerations. But that doesn't mean that it satisfies. The Florida long arm statute. For what constitutes. Engaged in business. It's always been our contention that. Mr Nara and. Contacts with the state. Yeah. Are very very attenuated the only. Contact they have the only contract they have. Period. A contract which is in the record and I'll be brief. Because my time is up. Yep calls for venue in California. Under California law. That. That. Those contracts are only with one person. And it's sky hop. And miss go to thank you. Thank you. Mr Esteban you say five minutes. Thank you. Chief judge prior. A few things to address first the February. Ninth. Letter that was sent. To the defendant. In this case. Did ask for the passwords. To be returned and that is on docket entry. One dash 22. The password to all of the outside vendor accounts. Which included. The the AWS. Servers. That was the main outside vendor. That that. The thought the that we have now. A we've been focusing on. The the subsection on count one. Essentially. Right but I want to turn our direction a little bit. To count three. Which is. I'm sorry to count two. Which is the violation. Of. 1030. A to C. This is a of the computer fraud and abuse act. And this is the Van Buren. The Van Buren section. Now in that. To state a claim there. We would we would have to state that. Essentially the defendants intentionally access. A computer. Without authorization. Or they exceeded the author. Authorized access. And thereby obtained information. In the protected computer. I believe we meet both prongs. And we've alleged that we've that we've met. Both prongs number one. Without authorization. They accessed it without. The computer without authorization. Because effective on February 9th. Making. We gave them. A date certain under which we had to have. All of our digital property return. That was by March 1st. So by March 2nd. They no longer had authorization to continue to access. The the. The servers. They we know that they did. And we know that they because they've admitted to it. If we look at it in their affidavit. Which is. Docket entry 50 dash 1. I believe it's in the last page. You have in count to the complaint. The complaint alleges that Nara and. Anderson. We're no longer authorized to have. Exclusive. Possession and control. It elaborates. The developers continued. Soul. Correct. Possession and control. Was without authority or alternatively. That the developers exceeded their authority. By remaining in. Soul correction. It doesn't appear to allege. That they weren't entitled. To access. They just weren't entitled to exclusive. Access. And that doesn't appear. To me to satisfy. Van Buren. For purposes of for purposes of. If. We're looking at there's two levels of access in this case. So there's first. The access to the AWS servers. And I would agree with you that what we have. What we have alleged with respect to the servers. Concerning that soul. Access. I believe it's still. It still qualifies as without authorization. Because they're not going to be the only ones to author. It doesn't seem to be what you allege. Doesn't. You don't appear to allege that they weren't. Authorized. It appears to allege. That they're misusing. Misusing something. They're authorized. Denying you. You access. I understand. Not with respect to the AWS. Server. But then we would move into the as an alternative argument. To the exceeding right. But what we're talking about. Is what you pled. And what you pled is. That the defendants lack authorization. Have exclusive possession. Or control of the software. Or paragraph 114. As well as additional maintenance. Isn't that a problem? It. Seems to me. You have a hard time sustaining the claim. As to the second count. Maybe more. Is a more debatable question. And to be clear. To be clear as to why. As to why that's pled that way. Because the account. The AWS account. Is in his name. So obviously. As for AWS. There's authorized access. Vis-a-vis AWS. To hold that server. He was holding it as our agent. It was set up as our agent. So from our perspective. We've revoked that access. Now understanding that at least. As to AWS. We'd first have to be able to get the passwords. And then contact AWS. To be able to change that account name. However. What he was no longer authorized to access. Was the software. That I think is very clear. And that would fall within the exceeding. Authorized access prong. Of that statute. We're just going to have to look at the allegations. Understood. And one last thing is. I'll close with. The district court. Did not. Look at the business activity. Collectively. And I think that is ultimately. The test as far as that. Thank you. We are adjourned. For the week.